**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4689
_____

SELENA A. SCOTT,

Appellant

v.

BANK OF AMERICA; BANK OF AMERICA CONSUMER CREDIT;
BANK OF AMERICA FUNDING, LLC; CAVALRY SPV I, LLC;
JOHN DOES 1-100

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:13-cv-00987)
District Judge: Honorable Gene E.K. Pratter
_____

Submitted Under Third Circuit LAR 34.1(a)
October 20, 2014

Before: AMBRO, FUENTES, and NYGAARD, <u>Circuit Judges</u>

(Opinion filed: November 3, 2014)

_____

OPINION[*]
_____

AMBRO, <u>Circuit Judge</u>

**I.**

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Selena A. Scott opened a credit card account with Bank of America/FIA Card Services, N.A. ("Bank of America") in 2005. It "securitized" the receivables from Scott's and other credit card accounts, and sold them to a trust under a so-called Pooling and Servicing Agreement. This move—a typical one by credit card issuers—"provides steady liquidity for card issuers" and "transfer[s] most downside credit risk on the card[.]" Adam J. Levitin, *Skin-in-the-Game: Risk Retention Lessons from Credit Card Securitization*, 81 GEO. WASH. L. REV. 813 (2013).

Scott's account became delinquent on June 30, 2009. After the default, Bank of America "charged-off" her account (*i.e.*, wrote the debt off as "uncollectable"). It then sold Scott's debt to Cavalry SPV I, LLC ("Cavalry"), and Cavalry in turn filed a collection action against Scott seeking $3,936.54 (the amount Scott owed) plus interest. Scott's counsel notified Cavalry of its belief that Bank of America did not have an interest in Scott's account to transfer, and Cavalry promptly withdrew its suit.

Motivated by her apparent victory, Scott filed a class-action complaint against, among others, Bank of America and Cavalry alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, and the Pennsylvania Fair Credit Extension Uniformity Act, 73 PA. CONS. STAT. § 2270.1 *et seq.* In an amendment to that complaint, she further alleged violations of the federal RICO statute, 18 U.S.C. § 1961, *et seq.*, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 PA. CONS. STAT. § 201.1 *et seq.* Underlying all of Scott's allegations was her belief that Bank of America had nothing to transfer to Cavalry once it securitized the receivables

2

from Scott's account. Thus, Cavalry's attempt to collect the amount Scott owed was unlawful.

Bank of America and Cavalry moved to dismiss Scott's Amended Complaint, arguing that the critical premise on which Scott's claims rely—that once a credit card company securitizes the receivables of a credit card account, it no longer retains an ownership interest in the account—is incorrect. The District Court granted the motion to dismiss with prejudice. Scott appeals that dismissal. We affirm in all respects.[1]

**II.**

Scott renews the argument she advanced before the District Court: because Bank of America lost any interest in Scott's credit card account once it securitized and sold the receivables, it had nothing to transfer to Cavalry. Thus, Cavalry's attempt to collect on the amount she owed was unlawful.

Scott misapprehends the effect of securitizing a credit card receivable. "Credit card securitization involves the securitization solely of the receivables, not of the accounts themselves." Levitin, *supra* at 826; *see also* J.A. 154–55 (Pooling & Servicing Agr. § 2.01) (providing that Bank of America was selling only the receivables associated with the credit card accounts, not ownership of the accounts). Thus, even after securitization the card issuer retains an ownership interest in the account.

The courts that have considered the effect of securitizing credit card receivables are all in agreement that it does not divest the issuer of its ownership interest in the credit

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1332. We have jurisdiction under 28 U.S.C. § 1291.

card accounts.  *See, e.g.*, *Tostado v. Citibank (South Dakota), N.A.*, No. 09-CV-549, 2010 WL 55976, at \*3 (W.D. Tex. Jan. 4, 2010) (assignment of receivables does not prevent a credit card issuer from recovering past-due credit card charges because, as the "real party in interest," the issuer retains "the right to enforce its interest on [its] accounts and loans"); *Shade v. Bank of America*, No. 2:08-cv-1069, 2009 WL 5198176, at \*4 (E.D. Cal. Dec. 23, 2009) ("plaintiff has provided no binding legal authority for his theory that because Bank of America securitized the account balances, it was no longer the real party in interest and could not assign the debt for collection to the other defendants").

In addition, once Scott's account fell into default, the Pooling and Servicing Agreement provides that ownership of these "Ineligible Receivables" automatically reverts to Bank of America.  *See* J.A. 160-61 (Pooling & Servicing Agr. § 2.04(d)(ii)–(iii)).  At that point—and regardless whether as a general matter ownership of a credit card account can be divorced from ownership of the account's receivables—the Pooling and Servicing Agreement placed ownership of the receivables squarely back in Bank of America's hands.

For these reasons, we affirm.